**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **COSTA DEL MAR, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNIQUE VARIETY, INC. and PARESHKUMAR PATEL,**<br><br>**Defendants.** | ) | **Civil Action No. 26-10821-BEM** |

**MEMORANDUM AND ORDER ON**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MURPHY, J.**

This action arises from the sale of seven pairs of allegedly counterfeit sunglasses at Jenny's Market, a convenience store in Weymouth, Massachusetts. Plaintiff Costa Del Mar, Inc. ("Costa") alleges Defendants Unique Variety, Inc. ("Unique Variety"), the operator of Jenny's Market, and Pareshkumar Patel ("Patel"), an officer and director of Unique Variety, displayed and sold counterfeit sunglasses bearing its registered trademark in violation of 15 U.S.C. § 1114. Costa moves for partial summary judgment solely on the issue of liability. Here, where the undisputed factual record clearly establishes the counterfeit sunglasses are likely to cause consumer confusion, the Court will grant Costa's motion for partial summary judgment on liability.

## I. Factual & Procedural Background

Except where noted, the following facts are undisputed and drawn from the parties' consolidated statement of material facts and responses. *See* Dkt. 38 ("CSMF").

Costa is a Florida corporation and wholly owned subsidiary of FGX International, Inc. *Id.* ¶ 1. Costa sells and markets its eyewear brand and related merchandise through authorized

retailers and online. *Id.* ¶ 2. As part of its business operations, Costa utilizes numerous federally registered trademarks. *Id.* ¶ 3. As relevant here, that includes U.S. Trademark Registration No. 3,273,228, defining Costa's "C" design mark as utilized on sunglasses, and U.S. Trademark Registration No. 3,857,379 for the word mark "COSTA" as utilized on sunglasses. *Id.*

Unique Variety owns and operates Jenny's Market, a convenience store in Weymouth, Massachusetts. *Id.* ¶¶ 8, 52. Patel and his wife, Mittal Patel ("Mittal"), each own a fifty-percent interest in Unique Variety. *Id.* ¶ 10. Patel is Unique Variety's president, director, corporate secretary, and registered agent. *Id.* ¶ 11. Patel manages the day-to-day operations at Jenny's Market, including deciding what products to sell, setting the prices, placing orders with suppliers, organizing the merchandise on the shelves, and checking inventory. *Id.* ¶¶ 14, 16–19. Together Patel and Mittal constitute the store's only staff members. *Id.* ¶ 13. Patel works at Jenny's market between sixty and eighty hours per week. *Id.* ¶ 15.

In July 2025, Patel purchased, in cash, twelve pairs of sunglasses from Blue Exodus, a sunglasses supplier. *Id.* ¶¶ 21–23, 53, 63. The sunglasses cost $5 each, and he set the pre-tax retail price at $12.99. *Id.* ¶¶ 22, 25, 53. The sunglasses were placed on a display rack inside Jenny's Market. *Id.* ¶ 26. On December 29, 2025, an investigator for Costa visited Jenny's Market, saw the sunglasses for sale, and purchased one pair in cash. *Id.* ¶¶ 27–28. After inspecting the item, Costa determined that the sunglasses bore counterfeit versions of two of its trademarks, the Costa logo and the Costa brand name. *Id.* ¶¶ 36, 41; *see also* Dkt. 29 at 10.[1] Defendants dispute that the logo and brand name appearing on the sunglasses are Costa's marks. CSMF ¶¶ 36–41.

---

[1] The Court reproduces an undisputed comparison of the Costa marks at issue and the sunglasses at issue below.

| AUTHENTIC TRADEMARK | AUTHENTIC EXEMPLAR | SUNGLASSES DISPLAYED AND SOLD ON DECEMBER 29, 2025 |
|---|---|---|
| Reg. No. 3,273,228 |  |   |
| COSTA Reg. No. 3,857,379 |   |   |

In addition, a product tag bearing the word "SPEXX" was affixed to the sunglasses. *Id.* ¶¶ 57, 68–69, 93; *see also* Dkt. 31 at 9.[2]

[2] The Court reproduces undisputed images of the products with the SPEXX tag below.




Defendants do not "have a direct license, authority or permission from [Costa] to use the Costa Trademarks." CSMF ¶ 43. In total, Defendants sold seven of the twelve pairs of sunglasses before taking the remaining five off the display rack following Costa's trademark infringement allegations. *Id.* ¶¶ 54–55. Sales of the sunglasses at issue brought in a gross pre-tax revenue of $90.93, for a net profit of $55.93. *Id.* ¶ 54. The five remaining pairs are retained by Defendants and are not for sale. *Id.* ¶ 45.

Costa filed its complaint on February 11, 2026, bringing one claim of trademark infringement under 15 U.S.C. § 1114 against Defendants. *See* Dkt. 1 ¶¶ 30–35. On August 24, 2026, after discovery was completed, Costa filed a motion for partial summary judgment. *See* Dkts. 28–29.

## II. Legal Standard

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that *every essential element* of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Bos.*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024).

## III. Discussion

### A. Liability Under 15 U.S.C. § 1114

The Lanham Act defines trademark infringement as any nonconsensual "use in commerce" of a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection

with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114.[3] A plaintiff alleging trademark infringement must prove two elements: "(1) the trademarks are 'entitled to trademark protection,' and (2) 'the allegedly infringing use is likely to cause consumer confusion.'" *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 (1st Cir. 2013) (quoting *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008)).

With respect to the first element, the parties agree that Costa possesses two registered marks entitled to trademark protection. CSMF ¶ 3. The only remaining question for the Court is whether the undisputed factual record supports the second element: a likelihood of confusion. In the First Circuit, likelihood of confusion is established by weighing eight factors known as the *Pignons* factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. *See Bos. Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989); *see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981). "No one factor is necessarily determinative, but each must be considered." *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983).

[3] As the First Circuit did in *Clemente Props., Inc. v. Pierluisi-Urrutia*, the Court will refer to the codified version of the Lanham Act "for clarity." 165 F.4th 1, 12 (1st Cir. 2026), *petition for cert. docketed*, No. 25-1426 (2026). In general, "Lanham Act caselaw is filled with jargon, and there are often multiple names to describe the same or similar concepts." *Id.*

As a preliminary matter, the parties dispute whether counterfeit marks are *per se* likely to confuse a consumer such that consideration of the eight *Pignons* factors is not required.[4] *See* Dkt. 29 at 8–9; *see also* Dkt. 31 at 6. The parties do not point to, nor is this Court aware of, any binding First Circuit precedent on this issue. Courts in other circuits, however, have employed varying approaches. Courts in the Southern District of New York "generally agree that 'where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each [] factor because counterfeit marks are inherently confusing.'" *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018) (quoting *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010); *see also Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437–38 (S.D.N.Y. 2020) (collecting cases).[5] The Fourth Circuit, on the other hand, notes that the presumption of likelihood of consumer confusion in a trademark infringement case only "arises from the *intentional* copying of plaintiff's trade dress or trademark." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 160 n.5 (4th Cir. 2012) (emphasis added) (internal quotation marks omitted).[6] And the Ninth Circuit has only held that a presumption of confusion *cannot* apply where the *products* at-issue are not identical. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976

---

[4] The Lanham Act defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. This product definition differs from the act of trademark *counterfeiting*, which is a separate violation of the Lanham Act. *Am. Petroleum Inst. v. Yatco Energy*, 2025 WL 2734705, at *11 (D. Mass. Sept. 25, 2025) (analyzing trademark counterfeiting separately from trademark infringement).

[5] Other courts around the country have come to similar conclusions. *See e.g.*, *Alo, LLC v. O3daplug*, 2026 WL 2749563, at *2 (C.D. Cal. Sep. 15, 2026) ("[W]hen the marks in question are counterfeit, courts presume a likelihood of confusion rather than conducting a full analysis."); *see, e.g.*, *PLR USA Holdings, Inc. v. MIR Apparel, LLC*, 2023 WL 6326617, at *3 (N.D. Ga. Sep. 28, 2023) ("[T]here is a presumption that counterfeit goods cause confusion. In fact, that is the entire point of a counterfeit good."); *see, e.g.*, *Coach, Inc. v. Island Rayz*, 2013 WL 1499610, at *5 (S.D. Ohio Apr. 11, 2013) ("The Court recognizes that there is a presumption of a likelihood of confusion where counterfeit goods are involved." (internal quotation marks omitted)).

[6] The Fourth Circuit's standard incorporates elements of the trademark counterfeiting claim discussed *supra* note 4.

F.3d 1074, 1080 (9th Cir. 2020) ("[E]ven assuming the marks are identical, there may be no presumption of consumer confusion if the products themselves are not identical.").

In light of the variety of approaches across the country, the Court will follow the example of *Luxottica Grp. S.p.A. v. E-Z Telecomm Corp.*, 839 F. Supp. 3d 23 (D. Mass. 2026), a substantially similar case recently decided in this District. In that case, which concerned counterfeit Ray-Ban sunglasses, the Court noted that because "counterfeit marks are designed to imitate genuine marks and are used on identical or substantially identical goods, a likelihood of confusion is presumed." *Id.* at 30 (citing *VMG Enters., Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 661 (D.P.R. 1992)). The same is true here. The sunglasses sold at Jenny's Market bear nearly indistinguishable reproductions of Costa's registered trademark "C" design mark. Dkt. 29 at 10. The frames are also emblazoned with the "Costa" word mark. *Id.* These marks are so similar that, at least once during her deposition, Mittal, Unique Variety's representative, affirmed they were Costa's marks. Dkt. 30-4 at 31:17–22 ("Q: And at the time the glasses were sold, they had the Costa mark on them? A: Yes. Q: Whether you knew about it or not, the classes had the Costa marks on them -- A. That is true."); *see also* CSMF ¶¶ 37–40.[7] Most glaringly, these near-identical marks appear on sunglasses, the very same type of products on which Costa places its marks. Looking at the comparator images, the Court is hard-pressed to think of a clearer example of a counterfeit than these "substantially indistinguishable" marks.[8] 15 U.S.C. § 1127.

---

[7] Defendants point to Mittal's other statements to cast doubt on her admission that the sunglasses bore Costa's marks. *See, e.g.*, Dkt. 34-3 at 21:5–13 ("A. So I'm not a sunglasses expert. So to me, I would not confirm right away because the logo of this over here and the printed over here looks -- to me it's tiny bit different. . . . I'm not an expert, but it look similar, but not the [sic] exactly. Q. They look similar; right? A. Yeah."). But even in that statement, Mittal affirmed that, at a minimum, the marks looked "similar," and only "a tiny bit different." *Id.* at 21:8–10

[8] Upon reviewing the sunglasses at issue, Costa's own corporate representative, Jason Groppe, determined that Costa "has never manufactured (or authorized any third party to manufacture) or sold any of these Costa trademarked sunglasses." Dkt. 30-1 ¶ 22. Defendants did not depose Groppe or otherwise contest his declaration.

Accordingly, the Court determines that a likelihood of consumer confusion is presumed and the Court could end the analysis at this juncture. Nevertheless, for completeness, the Court will briefly conduct the eight-factor *Pignons* analysis, just as the court did in *E-Z Telecomm*. 839 F. Supp. 3d at 32–33.

**1. <u>Factors Supporting a Likelihood of Confusion</u>**

Here, the undisputed factual record supports a likelihood of confusion under the First Circuit's eight-factor framework. The Court begins with the factors indicating a likelihood of confusion. The first two factors, similarity of the marks and similarity of the goods, have already been discussed and overwhelmingly favor Costa. The marks are substantially indistinguishable and the product type—sunglasses—are identical.[9] The eighth factor, the relative strength of the marks, also weighs in favor of a likelihood of confusion. "Factors useful in determining a trademark's relative strength include the length of time a mark has been used and the plaintiff's relative renown in its field; the strength of the mark in plaintiff's field of business, especially by looking at the number of similar registered marks; and the plaintiff's actions in promoting its mark." *Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F. Supp. 3d 124, 143 (D. Mass. 2019) (internal quotation marks omitted). Here, the Costa brand was established in 1983 and has been in continuous commercial use since then, including in Massachusetts. CSMF ¶¶ 2, 6. The Costa "C" design mark has been in use since 2000. Dkt. 30-1 ¶ 10. The Costa word mark has been in use since 2010. *Id.* ¶ 11. Costa has devoted substantial time, money and effort into developing

[9] True, the sunglasses are accompanied by a tag with the word "SPEXX." CSMF ¶¶ 57, 68–69, 93; *see also* Dkt. 31 at 9. But it cannot be the case that merely slapping a tag onto an objectively counterfeit product is sufficient to overcome the overwhelming similarity between the marks on the products themselves.

commercial awareness in its marks. *Id.* ¶ 13; CSMF ¶ 5.[10] This factor therefore weighs in favor of causing a likelihood of consumer confusion.

### 2. Factors Supporting No Likelihood of Confusion

Defendants raise genuine disputes about factors three, four, and five, which are often analyzed "simultaneously." *Bos. Athletic Ass'n*, 867 F.2d at 30. As in *E-Z Telecomm*, Defendants point to differences in the business models, retail price of the parties' goods, demographic makeup of the customer base, and the parties' advertising methods (or lack thereof) to raise genuine disputes as to these factors. Dkt. 31 at 11–15; *see also E-Z Telecomm*, 839 F. Supp. 3d at 33 (highlighting wide gap in retail prices and difference in services provided to customers to find certain factors weighed against confusion). While both parties do offer sunglasses for retail sale to customers in Massachusetts, Costa does so through authorized retailers, while Defendants sold their sunglasses on a display rack next to the cash register in a convenience store. CSMF ¶¶ 2, 26. Costa sells its sunglasses for approximately $100 to $300 per pair, while Defendants sold their sunglasses for $12.99. *Id.* ¶ 87; *see also id.* ("[A]uthentic Costa sunglasses generally retail at substantially higher prices than the sunglasses Defendants sold."). Therefore, these three factors weigh against likelihood of confusion.

Costa also presents no evidence of actual confusion, the sixth factor, though the absence of actual confusion "is not invariably necessary to prove likelihood of confusion." *Pignons*, 657 F.2d at 490; *see also* Dkt. 37 at 9 ("Costa does not rely on instances of actual confusion and need not."). Nor would the Court expect evidence of actual confusion given the limited sample size—only

[10] Defendants dispute the relative renown of Costa's marks by citing to marketing materials on Costa's website and an online article ranking sunglasses brands. Dkts. 34-1, 34-2. The former only bolsters the claim that Costa has expended time and effort into developing its brand. As for the latter, the Court will not consider the website or the associated "Luxury Sunglasses Brands Pyramid." Dkt. 34-2. Defendants have failed to establish a foundation for why the "Jesta Freak" website, or the article's mononymous author, "Ken," is an authority on the relative renown of sunglasses brands.

twelve pairs of sunglasses were offered for sale, and just seven were sold. Finally, the parties do not dispute that the seventh factor, the defendants' intent in adopting the mark, weighs against a likelihood of confusion. Costa does not contend that Defendants had any knowledge that the goods they were selling were counterfeit. CSMF ¶¶ 73–74;[11] *see also* Dkt. 37 at 10 (arguing with respect to the seventh factor that "a factor that does not favor the plaintiff does not defeat the claim").

**3. <u>Weighing the Factors</u>**

Ultimately, in weighing the factors, Court arrives at the same conclusion as it did when applying the presumption of confusion. "[T]he absence of evidence that Defendants intentionally sought to trade on [Costa's] goodwill, together with the differences in the parties' marketing channels and customer base, is insufficient" to alter the Court's determination that, based on the undisputed record, consumer confusion is substantially likely as a result of the remaining factors. *E-Z Telecomm*, 839 F. Supp. 3d at 33. The First Circuit has noted that the "most critical" factors in the likelihood of confusion analysis are "evidence of actual confusion, similarity of marks, similarity of goods and services, and strength of marks." *Beacon Mut. Ins. Co. v. OneBeacon Ins.*

[11] Costa disputes any facts related to Defendants' intent or knowledge as immaterial, though they are clearly relevant to this prong of the likelihood of confusion analysis. CSMF ¶¶ 73–74.

*Grp.*, 376 F.3d 8, 20 (1st Cir. 2004). Three of those four critical factors overwhelmingly favor Costa. Defendants are therefore liable for trademark infringement under 15 U.S.C. § 1114.[12]

### B. Affirmative Defenses

Costa also requests the Court dismiss Defendants' three affirmative defenses, first raised in Defendants' answer: (1) that Costa's claims are barred to the extent it seeks multiple penalties or remedies for the same conduct; (2) that any alleged damage caused by Defendants was not proximately caused by Defendants; and (3) that Costa fails to state a claim upon which relief can be granted. Dkt. 9 at 5. As to the first affirmative defense, Costa only seeks one remedy under one statute, 15 U.S.C. § 1114. Dkt. 1 ¶¶ 30–35. Costa "has elected to seek statutory damages pursuant to 15 U.S.C. § 1117(c)." Dkt. 29 at 1. Any penalties owed are governed by that statute. As for the second affirmative defense, causation is not an element of trademark infringement, so the Court need not consider proximate cause. *See* 15 U.S.C. § 1114. Finally, as for the third affirmative defense, the foregoing opinion demonstrates that Costa *has* stated a claim upon which relief can—and will—be granted. Defendants' affirmative defenses are dismissed.

## IV. Conclusion

For the foregoing reasons, Costa's motion for partial summary judgment is GRANTED.

---

[12] Patel asserts that, even if Unique Valley is liable, he is not individually liable because he did not intend to infringe upon Costa's marks. Dkt. 31 at 15–16. Under the Lanham Act, a corporate officer may be liable for an act committed by his corporation if the officer is a "moving, active conscious force" behind the infringement. *Polo Fashions, Inc. v. Branded Apparel Merch., Inc.*, 592 F. Supp. 648, 652 (D. Mass. 1984) (quoting *Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir. 1956)). However, the undisputed record leaves no doubt that Patel was a "moving, active conscious force," responsible for purchase and sale of the sunglasses at issue. He admits he purchased the sunglasses and put them up for sale. CSMF ¶¶ 21–23, 53, 63. While Patel frequently notes that he did not intend to sell counterfeit goods or have knowledge of Costa's marks, *see, e.g.*, Dkt. 31 at 3, "[l]iability for the sale of counterfeit goods under the Lanham Act does not depend on the seller's knowledge or intent. . . . 'The mere selling of counterfeit goods constitutes trademark infringement even if the seller did not know the goods were counterfeit.'" *E-Z Telecomm*, 839 F. Supp. at 30–31 (quoting *Polo Fashions, Inc. v. Fernandez*, 655 F. Supp. 664, 667 (D.P.R. 1987)); *see also Clemente Props.*, 165 F.4th at 40 ("Indeed, the Lanham Act expressly contemplates innocent infringement."); *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996) ("Evidence of bad intent . . . is simply not required in a trademark infringement case.").

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: November 3, 2026